# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA,**

vs.  Case No. 8:11-CR-401-T-27AEP

**RIGOBERTO BAUTISTA-VILLANUEVA,**

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Suppress Evidence Obtained From Vehicle Stop (Dkt. 31) and the Government's opposition (Dkt. 38). Upon consideration, and based on the findings and conclusions announced at the conclusion of the hearing, the motion is DENIED.[1]

On February 8, 2011, Border Patrol Agent Greg McConnell was positioned in a marked Border Patrol vehicle near the intersection of I-75 and I-10, north of Lake City, Florida. Agent John Blades was positioned nearby in a marked vehicle. I-10 and I-75 are known routes taken by alien smugglers, as I 10 runs from California through the southwestern United States to Jacksonville, Florida, and I 75 runs north-south through Florida and its agricultural and construction industries known for employing alien workers. McConnell noticed a dark colored four door sedan with Texas plates traveling south on I 75, occupied by four Hispanic adult males. The Texas tags were significant to McConnell because Texas is a border state and a majority of illegal aliens are known to come from the southwestern part of the United States, including Texas.

---

[1] This order serves to memorialize the ruling. The announced findings and conclusions are incorporated herein.

McConnell began following the vehicle and requested information on its registration via his computer. He noticed that the driver was clean cut, well groomed, clean shaven, and dressed nicely, whereas the other occupants were not well groomed, were not clean shaven, and were dressed in T-shirts, typical of aliens who had recently crossed the desert from Mexico to the United States. Based on his experience, McConnell knew that alien smugglers typically employed Hispanic, Spanish speaking drivers, and that these drivers were typically better dressed and better groomed than the aliens being smuggled.

From his vantage point in his SUV, McConnell was able to look into the vehicle as he came along side it and noticed no luggage, food wrappers or other indication of lengthy travel. The car was particularly clean. Although he positioned himself behind, in front and on both sides of the vehicle, the occupants continued to look straight ahead and did not appear to be engaged in any conversations. He noted that the driver did not look at the Border Patrol vehicle, even as he pulled along side.

It was reported to McConnell that the registered owner of the vehicle, PV Holdings, was based in Houston, a known alien smuggling hub. Additionally, more than 18 vehicles owned by PV Holdings were on record as having been stopped and seized because of alien smuggling, drug trafficking and gang related activities. A recent stop of a PV Holdings vehicle near Kingsville, Texas resulted in the occupants of the vehicle, all illegal aliens, fleeing the stop. McConnell believed, based on this information and what he had observed, that the subject vehicle was owned by an alien smuggling organization.

As the subject vehicle approached the Highway 90 exit, it abruptly swerved from the middle lane across the inside lane and exited, stopping at a gas pump in a BP stations on Highway 90.

McConnell followed the vehicle and pulled in behind it, concerned that there was about to be a "bail out" of the occupants. He had not activated his lights or siren. Blades pulled in behind McConnell, parking his vehicle on the other side of the gas pump the subject vehicle had stopped next to.

It is apparent from these undisputed facts that McConnell did not effect a traffic stop of the vehicle. Rather, the vehicle stopped on its own accord. McConnell, dressed in a Border Patrol uniform, approached the driver side of the vehicle, identified himself as a Border Patrol agent, and engaged the driver (Defendant herein) in conversation, asking him where they were coming from and going to. The driver responded that they were coming from Houston and heading to Orlando to attend a party. He produced a Florida driver's license with an Orlando address and produced a Honduran passport and residency papers. He told McConnell he had been working in Houston for a couple of months.

McConnell asked if anyone had suitcases and the driver said they were in the trunk. The driver consented to McConnell looking in the trunk and opened it. In the trunk, McConnell saw a backpack and small travel bag. The driver said they were his. McConnell found this significant because illegal aliens typically do not have luggage, having discarded their clothing after traversing the desert.

The driver consented to McConnell looking through the backpack. In it, he found an auto parts store receipt for a purchase in Orlando just four days before. When asked about the receipt, the driver told McConnell that he had driven from Houston to Orlando, purchased a part for a truck, and driven back to Houston. Believing this explanation was inconsistent with the driver having worked in Houston for a couple of months, McConnell continued his questioning.

McConnell asked the driver where his friends were from and the driver said they were from Mexico and Honduras but had forgotten there immigration papers "back in Houston." When asked, the occupants admitted to McConnell that they were in the United States illegally. All four suspects were then arrested.

Shortly after McConnell began questioning the driver, Blades noticed that one of the passengers had exited the vehicle and began walking toward the front of the vehicle. Blades, still positioned on the other side of the gas pump, directed the passenger to get back in the vehicle. At some point thereafter, Blades drove his unit around the front of the subject vehicle and positioned it between the vehicle and the BP convenience store, so that the gas pumps were not blocked.

Two BP store clerks witnessed some but not all of the event. They saw McConnell's SUV pull in behind the subject vehicle and McConnell approach the driver. Both clerks saw Blades' vehicle and a third Border Patrol vehicle which pulled in behind McConnell's vehicle. To the extent the clerks testified that in their opinion, Blades' vehicle blocked the subject vehicle from leaving, that testimony is not reliable. Nor is their account that the Border Patrol vehicles surrounded Defendant's vehicle "within seconds" credible. Both clerks acknowledged that they were not able to observe the entire event between the vehicles pulling in and the occupants being arrested. One went to the restroom for several minutes and the other acknowledged that she was distracted by other customers and her responsibilities inside the store. Although both may have perceived that the Border Patrol vehicles blocked in the subject vehicles, and that it all happened within seconds, their memories were clouded by the passage of time and more importantly, their admitted inability to observe the entire incident. Rather, the testimony of Agents McConnell and Blades was credible.

Two days after the incident, McConnell read the print out of the vehicle registration

information and learned for the first time that PV Holdings was actually a division of Avis Rental Car. Although there were rental car documents in the backpack he looked through, McConnell did not notice that it was a rental vehicle. Regardless, there was no indication from the computerized report he received while following the vehicle or any visible markings on the vehicle to alert him that the vehicle was an Avis vehicle.

The encounter between McConnell and Defendant was a nothing more than a non-coercive encounter in a public place. And no time did the agents block Defendant's vehicle or otherwise obstruct his exit from the area. Accordingly, the encounter was not a detention or seizure and therefore no Fourth Amendment concerns were implicated. *United States v. Perez*, 443 F. 3d 772, 778 (11th Cir. 2006)(" A consensual encounter does not implicate Fourth Amendment scrutiny."). And merely because McConnell approached Defendant's vehicle and engaged him in questioning, without more, did not constitute a seizure. *United States v. Mitchell*, 407 Fed.Appx. 407, 410 (11th Cir. 2011), *citing United States v. Drayton*, 536 U.S. 194, 201 (2002) and quoting from *United States v. Perez*, 443 F. 3d at 778 ("[T]he mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure.... Moreover ... the simple act of police questioning does not constitute a seizure."). A reasonable person standing in the shoes of Defendant would have felt free to cease interaction with McConnell and depart.

To the extent Defendant argues that Blades' directive to the passenger to get back in the vehicle constituted a detention, the Court disagrees. Whatever transpired between Blades and the passenger did not involve McConnell or Defendant. who were engaged in conversation. And to the extent Defendant relies on *United States v. Espinoza*, 490 F.3d 41 (1st Cir. 2007), in support of his contention that Defendant and the vehicle were detained, that case is factually distinguishable. In

5

*Espinoza*, although the subject vehicle had stopped on its own, the agent ordered the driver to turn his vehicle off, thereby effecting a seizure. The court in *Expinoza* noted that the officer had the "right to approach the parked vehicle and talk to its occupants if that interview was purely consensual." 490 F.3d at 49.

In sum, Agent McConnell did not effect a seizure of Defendant or his vehicle. The vehicle stopped on its own. McConnell had the right to approach the vehicle and question its occupants so long as the encounter was consensual. McConnell did not draw his weapon, took no overt action to prevent Defendant from driving away, and did nothing to obstruct or block the vehicle. The Fourth Amendment was therefore not implicated. To the extent that the encounter progressed into a seizure, McConnell had a reasonable articulable suspicion to briefly detain the occupants and investigate further after observing the Texas tag, the conduct of the occupants, receiving the registration information on the vehicle and its registered owner, and observing the vehicle abruptly cross two lanes and exit the interstate after being followed by the Border Patrol SUV in what could have been an evasive move.

Certainly when McConnell saw that the three passengers were traveling without any luggage, observed that their physical appearance was typical of illegal aliens having recently entered the United States, and heard the driver's incredible explanation for having driven cross country four days earlier to purchase an auto part, he had reasonable suspicion to suspect that alien smuggling was occurring. Further, when the driver told him that his passengers were from Mexico but that they had forgotten their immigration papers "back in Houston," he had reasonable suspicion to investigate further. And when the passengers confirmed they were illegal, McConnell had probable cause to arrest all of the occupants.

Even if McConnell's actions arguable constituted a detention of Defendant and the vehicle, the detention was supported by reasonable suspicion. I-75 is a known alien smuggling route and had been the subject of successful illegal alien interdictions by the Border Patrol for six years. Vehicles with Texas tags are significant because of Texas' proximity to Mexico. The Hispanic appearance of the driver and the occupants, although in and of itself insufficient to justify a stop, was nevertheless another factor supporting reasonable suspicion, considering given the location, the Texas tags and the agent's experience. The conduct of the vehicle's occupants was suspicious, particularly after McConnell positioned his marked SUV behind, to the sides and in front of the subject vehicle. The information McConnell receive about the registered owner added to his suspicion that the vehicle was owned by an alien smuggling organization. Finally, the abrupt exit across two lanes of the interstate could reasonably be viewed as evasive. *United States v. Mitchell*, 407 Fed. Appx. At 410 ("Evasive behavior is a 'pertinent factor,' and unprovoked flight may serve as the basis for a reasonable suspicion."), *citing Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

For these reasons, Defendant's Motion to Suppress Evidence Obtained From Vehicle Stop (Dkt. 31) is DENIED.

**DONE AND ORDERED** in chambers this 7th day of October, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record